IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
BINGHAMTON DIVISION

| | |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION, | Civil Action No. 3:19-cv-01007-LEK-ML |
| Plaintiff, | |
| vs. | |
| CARGILL, INC. | **SECOND AMENDED CONSENT DECREE** |
| Defendant. | |

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ................................................................................. 3
II.    DEFINITIONS .......................................................................................................... 3
III.   COMPLIANCE MEASURES ................................................................................. 5
IV.   HILLSIDE INVESTIGATION ................................................................................ 9
V.     FORCE MAJEURE ................................................................................................ 10
VI.   CONSENT DECREE IMPLEMENTATION MONITORING ........................... 11
VII.  PAYMENTS ........................................................................................................... 12
VIII. EFFECT OF CONSENT DECREE ...................................................................... 12
IX.   FEDERAL REVIEW OF CONSENT DECREE .................................................. 13
X.     MODIFICATION AND ENFORCEMENT OF CONSENT DECREE ............. 14
XI.   DISPUTE RESOLUTION PROCEDURE ........................................................... 14
XII.  NOTICES ................................................................................................................ 15
XIII. MISCELLANEOUS PROVISIONS ..................................................................... 16
XIV. TERMINATION .................................................................................................... 17
XV.  APPENDICES ........................................................................................................ 17
        1. Best Management Practices Plan, Cargill, Inc. Cayuga Mine, Lansing

        2. Map Identifying Hillside Concrete Structure

WHEREAS, Our Children's Earth Foundation (hereinafter the "Plaintiff") sent a notice of violation and intent to sue letter to Cargill, Inc. (hereinafter the "Defendant") and Cargill Deicing Technology on April 25, 2019, and filed a Complaint with this Court on August 15, 2019, alleging violations of 33 U.S.C. §§ 1311(a) and 1342 of the Clean Water Act and 42 U.S.C. § 6972(a)(1)(B) of Resource Conservation and Recovery Act;

WHEREAS, Cargill Deicing Technology is not a distinct legal or corporate entity, but a division of Cargill, Inc.

WHEREAS, Plaintiff alleges that the Defendant discharged storm water, process wastewater, and other pollutants from its Facility in violation of the Permit, and without authorization of a permit, in violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342;

WHEREAS, Plaintiff alleges that the Defendant contributed to the handling, transportation, and disposal of a solid waste that may present an imminent and substantial endangerment to health or the environmental, in violation of section 7002(a)(1)(B) of the RCRA, 42 U.S.C. § 6972(a)(1)(B);

WHEREAS, Plaintiff is seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs;

WHEREAS, Defendant does not admit any liability alleged in the Complaint;

WHEREAS, Plaintiff and the Defendant agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and would like to avoid prolonged and costly litigation; and

WHEREAS, this proposed Consent Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency for the forty-five (45) day statutory review period, pursuant to 33 U.S.C. § 1365(c).

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

## I.     JURISDICTION AND VENUE

1. Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (CWA jurisdiction), and 42 U.S.C. § 6972(a) (RCRA jurisdiction).

2. Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), 42 U.S.C. § 6972(a)(1)(B), and 28 U.S.C. § 1319(b)(2) because the alleged events or omissions giving rise to this action occurred at the Facility, which is within this judicial district.

3. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree. For purposes of this Consent Decree, Defendant consents to venue in this judicial district.

## II.     DEFINITIONS

4. Terms used in this Consent Decree that are defined in the CWA or RCRA and the implementing regulations promulgated pursuant to the Acts shall have the meanings assigned to them in the Acts or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

    a. "Bulk Loading Tower" shall mean the building identified by that name on Figure 2 of the Best Management Practices ("BMP") Plan appended to this Consent Decree;

b. "Cargill" shall mean the corporation incorporated under the laws of the state of Delaware, and registered as a foreign business corporation in New York State, and its divisions, including Cargill Deicing Technology;

c. "Clean Water Act" or "CWA" shall mean 33 U.S.C. § 1251 *et seq.*;

d. "Complaint" shall mean the complaint filed by Plaintiff in this action;

e. "Consent Decree" shall mean this Consent Decree and all appendices attached hereto listed in Section XV;

f. "Department of Environmental Conservation" or "DEC" shall mean the New York State Department of Environmental Conservation;

g. "Effective Date" shall mean the date upon which this Consent Decree is entered by the Court;

h. "EPA" shall mean the United States Environmental Protection Agency;

i. "Facility" shall mean the real property associated with the mine and processing infrastructure at 191 Portland Point Road., Lansing, New York 14882, including real property owned, operated, or leased by Cargill, and property adjacent to such property that is subject to allegations in the Complaint;

j. "Lower On-Site Storage Pad" shall mean the area referred to as the Lower Bulk Storage Pad on Figure 2 of the BMP Plan appended to this Consent Decree;

k. "Our Children's Earth Foundation" or "OCE" shall mean the not-for-profit environmental organization organized under the laws of the state of California, with its principal place of business in Napa, California, including its members, employees, and directors;

l.  "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral;

m.  "Parties" shall collectively mean Our Children's Earth Foundation and Cargill, Inc.;

n.  "Permit" shall mean the New York State Pollutant Discharge Elimination System ("SPDES") Permit No. NY-0101290, as amended or reissued during the term of this Consent Decree;

o.  "Quarry Pad" shall mean the area referred to by that name on Figure 2 of the BMP Plan appended to this Consent Decree;

p.  "Resource Conservation and Recovery Act" or "RCRA" shall mean 42 U.S.C. § 6901 *et seq*;

q.  "Section" shall mean a portion of this Consent Decree identified by a roman numeral;

r.  "Weigh Scale/Scale House" shall mean the area so identified in Appendix 6 of the BMP Plan appended to this Consent Decree.

### III.    COMPLIANCE MEASURES

5.  Best Management Practices Plan.

    a.  Defendant shall operate the Facility consistent with the BMP Plan identified as Appendix 1 to this Consent Decree in Paragraph 32(a).

    b.  The Parties recognize that the BMP Plan is a living document and that the Defendant may need to update the BMP Plan consistent with the terms of the Permit. If Defendant makes material updates to the BMP Plan it shall provide notification and a copy of the updated BMP Plan to Plaintiff within thirty (30)

days after the submission of the BMP Plan to the DEC. If Plaintiff objects to any update to Chapters 4 or 5 of the BMP Plan during the term of this Consent Decree it can invoke the Dispute Resolution in Section XI. Plaintiff shall have the burden in any Dispute Resolution under Section XI to demonstrate that any disputed update to the BMP Plan will materially impair the ability of Defendant to comply with the numeric effluent limitations in the Permit.

6. Facility Projects.

   a. *Lower On-Site Storage Pad*. Cargill shall take the following actions associated with the Lower On-Site Storage Pad.

      i. Dust Suppression Equipment. Cargill shall install dust suppression equipment, which is expected to take the form of a dust suppression hopper, where the conveyor belt system deposits salt at the Lower On-Site Storage Pad. Cargill shall complete installation within twelve (12) months of the Effective Date of this Consent Decree.

      ii. Permanent Cover. Defendant shall design and install permanent cover at the Lower On-Site Storage Pad. "Permanent cover" shall mean, at a minimum, a structure with a roof and full enclosure on three sides, where the purpose of the permanent cover is to minimize the exposure of salt on the Lower On-Site Storage Pad to precipitation. Defendant shall complete the following interim and final milestones:

         1. The Parties shall meet and confer on Defendant's design of the permanent cover no later than nine (9) months from the Effective Date of this Consent Decree;

      2. Defendant shall begin construction of the permanent cover within eighteen (18) months of the Effective Date of this Consent Decree. If the meet and confer process in Paragraph 6(a)(ii)(1) results in changes to the design of the permanent cover that may delay construction, the Parties shall mutually agree on an updated milestone to begin construction; and

      3. Defendant shall complete construction of the permanent cover within three (3) years of the Effective Date of this Consent Decree.

b. *Bulk Loading Tower*. Defendant shall update the existing dust suppression equipment and install additional air emissions control systems at the bulk loading tower to provide improved containment and capture of dust generated during salt loading operations.

    i. The Parties shall meet and confer on Defendant's plans to update the existing dust suppression equipment and install additional air emissions control systems at the bulk loading tower no later than nine (9) months from the Effective Date of this Consent Decree; and

    ii. Defendant shall update the existing dust suppression equipment and install additional air emissions control systems within twenty four (24) months of the Effective Date of this Consent Decree. If the meet and confer process in Paragraph 6(b)(i) results in changes to the plans for an update to the existing dust suppression equipment and installation of additional air emissions control systems, the Parties shall mutually agree on an updated deadline.

    c. *Weight Scale/Scale House*. Defendant shall take the following actions with respect to the Weight Scale/Scale House no later than eighteen (18) months from the Effective Date of this Consent Decree:

        i. Defendant shall submit a complete permit application or submit a notice of intent to obtain coverage under a SPDES permit for discharges from the Weight Scale/Scale House, unless the DEC makes a determination that a SPDES permit is not necessary.

        ii. Defendant shall provide Plaintiffs with documentation establishing that permit coverage for the Weight Scale/Scale House has been obtained.

        iii. Defendant shall provide Plaintiffs with a copy of the BMP Plan or Stormwater Pollution Prevention Plan applicable to the Weight Scale/Scale House.

    d. *Quarry Pad*.  Defendant shall take the following actions with respect to the Quarry Pad:

        i. Defendant shall not store salt on the Quarry Pad without first modifying the Quarry Pad and accompanying stormwater pond to make them substantially similar to the adjacent pad and stormwater pond in their ability to contain, prevent infiltration, and direct stormwater associated with industrial activities for management and discharge at Outfall 001 in accordance with the Permit.

        ii. Defendant shall notify Plaintiff before storing salt on the Quarry Pad and, as part of that notification, shall explain to Plaintiff the changes that have been made to the Quarry Pad in order to conform to Paragraph 6(d)(i).

## IV.     HILLSIDE INVESTIGATION

7. Defendant shall complete a good faith investigation of water exiting the hillside via a concrete structure adjacent to the Facility, but that is located on property that is not owned by Defendant, as identified in Appendix 2 to this Consent Decree in Paragraph 32(b).

   a. Defendant shall provide Plaintiff copies of any investigation plans provided to DEC as the scope of investigation is developed.

   b. Defendant shall submit a report of its findings on its investigation to the DEC by July 31, 2022. Defendant shall submit to Plaintiff a copy of this report at the time it is submitted to the DEC.

   c. Defendant will diligently pursue regulatory approval from the DEC, as necessary, to, by July 31, 2022, capture water exiting the hillside at the concrete structure. Defendant will design, construct and operate a system that is capable of capturing 40 gallons per minute of water exiting the hillside at the concrete structure, but Defendant is not responsible for capturing any water exiting the hillside at the concrete structure at a rate above 40 gallons per minute. Defendant will discharge the water that is captured consistent with the terms of the Permit.

   d. The requirement in Paragraph 7(c) to capture the water is subject to Defendant obtaining all necessary authorizations from the owner of the property where the concrete structure is located. The capture, management, and discharge is intended to be a temporary measure and required until termination of this Consent Decree. During the term of this Consent Decree, Defendant shall not discontinue the capture, management and discharge without written approval from DEC to

address the water exiting the hillside, or the source of that water, in a different manner or without a written determination from DEC that Defendant is not responsible for further management of that water. Defendant shall notify Plaintiff of its intent to discontinue the capture, management and discharge of this water at least 30 days in advance and shall submit to Plaintiff a copy of the DEC approval or determination.

## V.    FORCE MAJEURE

8. "Force Majeure" shall mean any event arising from causes beyond the control of Defendant, its contractors, or any entity controlled by the Defendant that delays or prevents the performance of any obligation under Paragraphs 5-7 of this Consent Decree, including delays in obtaining regulatory approvals, including from the DEC, or third-party authorizations, despite the Defendant's best efforts to fulfill the obligation.

   a. If Plaintiff agrees that the delay or anticipated delay is attributable to a Force Majeure event, then the time for the Defendant to perform the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by such time as is necessary to complete those obligations as identified by Defendant.

   b. If Plaintiff does not agree that a Force Majeure event has occurred, or do not agree to the extension of time sought by the Defendant, then Plaintiff will issue a notice, in writing, to the Defendant on the Plaintiff's position that the delay or anticipated delay was not caused by a Force Majeure event or that Plaintiff does not agree to the extension of time sought by the Defendant. The Parties shall then meet and confer in good faith to establish new deadlines. If no agreement can be

reached, Plaintiff may seek intervention of the Court consistent with Section XI (Dispute Resolution) of this Consent Decree.

## VI. CONSENT DECREE IMPLEMENTATION MONITORING

9. Defendant shall pay Plaintiff $18,000.00 for the expected technical and legal costs to monitor implementation of this Consent Decree. If Plaintiff's technical and legal costs to monitoring implementation of this Consent Decree exceed $18,000.00 it shall not seek reimbursement from Defendant. If Plaintiff's technical and legal costs to monitor implementation of this Consent Decree are less than $18,000.00, Plaintiff shall donate the difference to Ducks Unlimited to be used for conservation activities in the Finger Lakes Watershed, which includes Cayuga Lake.

   a. Defendant shall pay Plaintiff $6,000.00 at the end of one (1) year, two (2) years, and three (3) years, respectively, from the Effective Date of this Consent Decree to satisfy the obligation in Paragraph 9.

   b. As part of Plaintiff's monitoring of the implementation of this Consent Decree, Defendant will consent to one (1) visit per year to the Facility by Plaintiff's technical representative. Plaintiff shall give Defendant two (2) weeks' notice prior to requesting any visit to the Facility. The scope of the site visit to the Facility shall be limited to pursuant to this Paragraph to what is necessary to determine Defendant's compliance with Paragraphs 5-7 of this Consent Decree.

## VII. PAYMENTS

10. Defendant shall pay a sum of $150,000.00 to Ducks Unlimited, a 501(c) nonprofit organization dedicated to the conservation of wetlands and associated upland habitats for waterfowl and other wildlife.

    a. This payment shall be used for conservation activities in the Finger Lakes Watershed, which includes Cayuga Lake.

    b. Defendant shall pay $75,000.00 of the $150,000.000 within twelve (12) months of the Effective Date of this Consent Decree. Defendant shall pay the $75,000.00 balance of the $150,000.00 within twenty-four (24) months of the Effective Date of this Consent Decree.

    c. To the extent any payment is made to the DEC within twenty-four (24) months of the Effective Date of this Consent Decree for allegations of noncompliance with the CWA or RCRA occurring prior to the Effective Date of this Consent Decree, the payment under Paragraph 10 shall be reduced by the amount of the payment to the DEC.

11. Defendant shall pay a sum of $150,341.82 as full and complete satisfaction of Plaintiff's claims for attorneys' fees and costs incurred through the Effective Date, including all investigative and expert costs.

## VIII. EFFECT OF CONSENT DECREE

12. Upon Court approval and entry of this Consent Decree, Plaintiff covenants not to sue and releases Defendant (including its representatives, affiliates, assigns, agents, employees, officers, attorneys, and consultants) from any and all claims, causes of action, or liability related to stormwater, process wastewater, or other pollutants under Section 505 of the

CWA, 33 U.S.C. § 1365, and solid waste under Section 7002 of RCRA, 42 U.S.C. § 6972, for damages, penalties, fines, injunctive relief, or any other claim or relief through termination of this Consent Decree (i) relating to or resulting from noncompliance with the CWA or RCRA associated with the Facility occurring prior to the Effective Date, and (ii) for any past violations of the CWA or RCRA at the Facility alleged, or that could have been alleged in the Complaint. This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Consent Decree.

13. Defendant releases and discharges Plaintiff and its representatives, assigns, agents, employees, officers, attorneys and consultants, including those who have held positions in the past, from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with this action through termination of this Consent Decree.

## IX.    FEDERAL REVIEW OF CONSENT DECREE

14. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the Agencies. Therefore, upon signing of this decree by the Parties, Plaintiff shall serve copies of this Consent Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. If for any reason the United States should decline to approve this Consent Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Consent Decree raised by the United States.

15. Upon the expiration of the forty-five (45) day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Consent Decree. If for any

reason the Court should decline to approve this Consent Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

## X. MODIFICATION AND ENFORCEMENT OF CONSENT DECREE

16. This Consent Decree may be modified only upon written consent of the Parties and the approval of the Court.

17. The United States District Court for the Northern District of New York shall retain and shall have jurisdiction over the Parties to this Consent Decree for the resolution of any disputes that may arise under this Consent Decree. This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Consent Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Consent Decree.

18. Plaintiff shall provide Defendant with five (5) business day's written notice prior to initiating court proceedings to enforce this Consent Decree.

## XI. DISPUTE RESOLUTION PROCEDURE

19. Any dispute that arises with respect to the meaning or requirements of this Consent Decree shall be, in the first instance, the subject of informal negotiations between the Parties affected by the dispute to attempt to resolve such dispute.

20. If a dispute between the Parties cannot be resolved by informal negotiations, a Party may file a motion with the Court seeking resolution of the dispute. The motion shall set forth the nature of the dispute and a proposal for its resolution. The other Party shall have 30 days to respond to the motion and propose an alternate resolution.

21. No part of this Consent Decree shall be read to limit the Court's inherent authority to police its judgments. In resolving any dispute under this Section, the Court shall have discretion to award attorneys' fees and costs.

## XII.   NOTICES

22. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Consent Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing (including e-mail). Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given (a) when actually received or refused by the party to whom sent if delivered by courier, or (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

      Notices for Plaintiff shall be sent to:

      Edan Rotenberg
      Super Law Group, LLC
      180 Maiden Lane, Suite 603
      New York, New York 10038
      edan@superlawgroup.com

Notices sent to the individual listed above at the address listed above shall be deemed as notice to Plaintiff.

      Notice for Defendant shall be sent to:

      Cargill, Incorporated
      Law Department
      15407 McGinty Road West MS24
      Wayzata, MN 55391
      Attn: Environmental Law
      gina_young@cargill.com

>Samuel L. Brown
>Hunton Andrews Kurth LLP
>50 California Street Suite, 1700
>San Francisco, CA 94111
>slbrown@hunton.com

Notices sent to the individual listed above at the address listed above shall be deemed as notice to Defendant.

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

### XIII.   MISCELLANEOUS PROVISIONS

23. This Consent Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

24. Each person signing this Consent Decree represents and warrants that s/he has been duly authorized to enter into this Consent Decree by the Party on whose behalf it is indicated that the person is signing.

25. This Consent Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

26. Defendant shall notify Plaintiff prior to any transfer of ownership or control by Cargill of the Facility to a non-Party. Defendant agrees that, as a condition of transfer of ownership or control of the Facility, the new owner or operator shall be informed in writing of this Consent Decree and of its requirements to comply with the CWA and RCRA.

27. The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Consent Decree, but shall be construed as if all Parties prepared this Consent Decree, and any rules of construction to the contrary are

hereby specifically waived. The terms of this Consent Decree were negotiated at arm's length by the Parties hereto.

28. The section and paragraph headings contained in this Consent Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Consent Decree.

29. This Consent Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original. Any one of such completely executed counterparts shall be sufficient proof of this Consent Decree. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree. Copies of the original Consent Decree, whether transmitted by facsimile or other means, shall be effective.

30. In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

## XIV.  TERMINATION

31. This Consent Decree shall terminate on July 31, 2023.

## XV.  APPENDICES

32. The following appendices are attached hereto and incorporated into this Consent Decree:

   a. Appendix 1 – Best Management Practices ("BMP") Plan, Cargill, Inc. Cayuga Mine, Lansing

   b. Appendix 2 – Map Identifying Hillside Concrete Structure

ORDERED THIS __28th__ DAY OF __October__, 2021

_____
Lawrence E. Kahn
Senior U.S. District Judge